**TURNER & NEWALL, PLC, Plaintiff,**

v.

**CANADIAN UNIVERSAL INSURANCE COMPANY, et al., Defendants.**

No. 86–0801.

United States District Court, District of Columbia.

Jan. 30, 1987.

Paul C. Warnke, Harold D. Murry, Jr., Philip H. Hecht, Clifford & Warnke, Washington, D.C., Charles E. Dorkey, III, Thomas I. Sheridan, III, Richards, O'Neil & Allegaert, New York City, for plaintiff.

John P. Arness, William J. Bowman, Beth P. Gesner, Hogan & Hartson, Washington, D.C., for defendants Canadian Universal Insurance Company, First State Insurance Company, and New England Insurance Company.

James P. Schaller, M. Elizabeth Medaglia, Jackson & Campbell, Washington, D.C., for defendant Lexington Insurance Company.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiff Turner & Newall, PLC, seeks to require four of its insurers,[1] pursuant to contractual agreements, to defend it in some seventy lawsuits now pending throughout the United States, and to indemnify it for costs already incurred in its own defense. In those lawsuits, various claimants allege that property damage resulted from the use of asbestos and related products that were manufactured, distributed, or sold by Turner & Newall or its subsidiaries.[2] Pending before the Court are various motions,[3] including a motion by defendants to transfer this action to the Southern District of New York. For the reasons stated below, the Court grants the motion to transfer and leaves the resolution of any remaining motions to the transferee court.

Defendants ask the Court to transfer this case pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice. According to defendants, this lawsuit has no connection with the District of Columbia but has a substantial connection with the Southern District of New York. Moreover, defendants argue that Turner & Newall have chosen this forum simply to take advantage of an unusually helpful precedent, *Keene Corp. v. Insurance Company of North America*, 667 F.2d 1034 (D.C.Cir. 1981).

Although the Court recently granted a motion to transfer for the same reasons in a similar case,[4] it is a familiar rule that the

1. These four defendants are Canadian Universal Insurance Company of Providence, Rhode Island, and three companies from Boston, Massachusetts: First State Insurance Company, Lexington Insurance Company, and New England Reinsurance Company.

2. Most of these claims have been brought by local school boards, with others coming from state and local governments or private property owners.

3. These motions include plaintiff's motion for partial summary judgment and a motion by three insurers to file a third-party complaint.

4. In *Schmid Laboratories, Inc. v. Hartford Accident and Indemnity Company*, — F.Supp. — No. 84–3718 (D.D.C. March 27, 1986), this Court

decision whether to transfer under section 1404(a) turns on "a factually analytical, case-by-case determination," *SEC v. Savoy Industries, Inc.,* 587 F.2d 1149, 1154 (D.C. Cir.1978), and that "[i]ronclad adherence to abstract rules is generally inappropriate" in this context. *Eli Lilly & Co. v. The Home Insurance Co.,* No. 82–0669, slip op. at 5 (D.D.C. Sept. 30, 1982). Consequently, although this Court's earlier decision may serve as a guide, the Court's task here is to examine whether, in light of these particular facts, a transfer would serve the convenience of witnesses or parties, and if it would serve the interests of justice in any way, such as to avoid multiplicity of litigation. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3854 (1986).

## I

Defendants first contend that Turner & Newall, a British company, has no connection with the District of Columbia, and they further contend that the only connection between this suit and this District is that one of the seventy-odd underlying lawsuits was brought here. Rather than to answer these contentions by showing any factual link at all between their claim and the District, plaintiff Turner & Newall makes general arguments that are not particularly persuasive.

■ For example, Turner & Newall places great weight on its right, as a plaintiff, to choose a forum, and the general presumption against disturbing such a choice. But as defendants correctly point out, this presumption loses much of its force when the action has little relationship to the forum chosen. *See Franklin v. Southern Railway Co.,* 523 F.Supp. 521, 524 (D.D.C.1981). In fact, the presumption may switch to defendants' favor in the

District of Columbia when neither party resides in the chosen forum and the cause of action arises elsewhere. *See Mills v. Aetna Fire Underwriters Insurance Co.,* 511 A.2d 8, 11 (D.C. 1986). Legal presumptions thus will not go very far in helping plaintiffs keep this lawsuit in this forum, if the relevant factors under section 1404(a) point to a different forum.

■ Rather than to point out some factual connection between this lawsuit and the District of Columbia, plaintiff further relies on its "contractual right to select the forum." [5] All the insurance contracts here involved apparently contain the following standard clause:

> It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction....[6]

The existence of such a clause, however, will not in itself persuade the Court to keep jurisdiction of this case, for two reasons.

First, a recent decision from the Court of Appeals for this Circuit strongly implies that a clause such as the one referred to above may not come into effect at all. In *Eli Lilly Co. v. The Home Insurance Co.,* 794 F.2d 710 (D.C.Cir.1986), the court stated that, in order for the "failure of the Company to pay" clause to operate, an insurer must "repudiate liability"—and the mere fact that an insurer disputes liability is not a repudiation. *Id.* at 719 n. 22. Since it is no more clear in the instant case than in *Lilly* that defendants have "repudiated" liability—whatever that phrase means—it is not at all clear that the so-

was presented with a motion to transfer by two insurance company defendants, in a case in which the manufacturer of an intra-uterine device alleged that the insurers had breached their contractual duty to defend it. The defendants justified the transfer for the same reasons asserted in this case—lack of connection with the chosen forum, a greater connection with the

New York court, and forum shopping. The Court agreed and granted the motion. *Id.,* slip op. at 4–8.

**5.** Plaintiff's Statement of Points and Authorities at 5.

**6.** Defendants' Reply Brief at 2.

called "service of suit" provision has any bearing on this motion.

Second, the above provision would not necessarily control the Court's decision even if it were in effect. As the leading commentors have noted:

> A contractual provision specifying the forum for any litigation arising out of the contract ... cannot be decisive on a motion to transfer. "Congress set down in § 1404(a) the factors it thought should be decisive on a motion for transfer. Only one of these—the convenience of the parties—is properly within the power of the parties themselves to affect by a forum-selection clause. The other factors—the convenience of witnesses and the interest of justice—are third party or public interests that must be weighed by the district court; they cannot be automatically outweighed by the existence of a purely private agreement between the parties."

C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3847 (quoting *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 757–48 (3d Cir.1973)). Since plaintiffs have failed to articulate either a factual connection with the District of Columbia or a solid legal reason for a presumption against transfer, the next question is whether significantly greater contacts exist between this lawsuit and the Southern District of New York.

As plaintiffs are forced to concede, at least three significant connections exist between this action and New York. First, the insurance policies at issue were all brokered through Fred S. James & Company of New York, Inc.[7] Second, these insurance policies were issued to Turner & Newall Industries, Inc., which at the time of issuance had its offices at 50 Broadway, New York City. Given these contacts, defendants have a reasonable claim indeed that "the negotiation and brokering process for the insurance policies at issue here was centered in New York City."[8] Third, as defendants point out, it is inevitable that testimony and documentary evidence from employees of Fred James & Co., a New York firm, will be central to this action, and the James witnesses would be beyond this Court's power to issue subpoenas in order to compel attendance at trial.[9]

For all these reasons, it is clear that this action has a substantially greater factual connection with the Southern District of New York than with the District of Columbia. As this Court recently noted in *Schmid Laboratories, Inc. v. Hartford Accident and Indemnity Company,* No. 84–3718 (D.D.C. March 27, 1986), "that showing would not alone justify transferring the case to New York because the nationwide scope of the case reduces somewhat the importance of those factual considerations." *Id.,* slip op. at 5–6. Defendants' second argument—the same argument that justified transfer in *Schmid*—remains to

---

**7.** Rather than to dispute the location of the brokerage, plaintiff emphasizes that the "person actually responsible for handling [Turner & Newall]'s account ... neither lives nor works in New York." Plaintiff's Statement of Points and Authorities at 9. Had plaintiff been able to allege, for example, that this particular broker lived and worked in the District of Columbia, this might have gone far toward keeping this lawsuit in this jurisdiction. But as things stand, the Court is left with the unanswered contention that evidence about the brokering of these contracts will focus on New York.

**8.** Defendants' Reply Brief at 6.

**9.** *See* Fed.R.Civ.P. 45(e). Defendants quite reasonably assert that the "key witnesses to the intent of the parties in entering the insurance contracts at issue are the brokers who dealt with the policies," in this case the James Company in New York. Defendants' Motion to Transfer at 6. However, defendants' argument on this point is hardly ironclad. They can only say, for example, that James' employees "are likely to be located in New York, ..." *Id.* Plaintiff contradicts these assertions to some extent by saying that two brokers who dealt with Turner & Newall, Arthur Deric and Rabin Smith, are located outside of New York, as is Thomas Pemberton, the Turner & Newall employee "who was primarily responsible for obtaining the policies at issue." Pemberton is a resident of England; the residence of the two brokers is unclear. *See* Plaintiff's Statement of Points and Authorities at 9. Standing alone, this third connection between New York and the instant lawsuit might not warrant a transfer.

be considered: that transfer is warranted in the interest of justice because Turner & Newall engaged in forum shopping in choosing to file this lawsuit in the District of Columbia.

## II

Like defendants in *Schmid,* the insurers here argue that plaintiff filed its lawsuit in this jurisdiction simply to benefit from this Circuit's ruling in *Keene Corp. v. Insurance Company of North America, supra.* In that case, which involved a contractual dispute between an insured and its insurer over the duty to defend tort claims arising from asbestos exposure, this Circuit held that such a duty is extremely broad.[10] Most other courts have held the duty to be much narrower. *See, e.g., Eagle-Pitcher Industries v. Liberty Mutual Insurance Co.,* 682 F.2d 12 (1st Cir.1982).[11] Rather than to deny that it chose the District of Columbia because of *Keene,* plaintiff merely points out that, first, it could have brought this lawsuit in New Jersey, since one District Court here has adopted *Keene,*[12] and second, that forum shopping is not inherently evil.

In response to this, the Court reiterates what it said in *Schmid:*

> [T]he transfer provisions in the U.S. Code, which great out of the common law doctrine of *forum non conveniens,* were in part intended to prevent forum shopping. This Court cannot find that it is in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled and the choice of forum may well dictate the outcome of the case.

While choice of an advantageous forum alone might not warrant a transfer, as plaintiff asserts, when such forum shopping is considered with the other factors in this case, *i.e.,* the complete lack of nexus with the District of Columbia and the relatively more convenient forum available in the Southern District of New York, it is clear that this case should be transferred to that district. *Schmid,* slip op. at 7–8.

For the above reasons, defendants' motion to transfer this case to the Southern District of New York will be granted.

---

**10.** The *Keene* court held that, in personal injury cases involving defective products such as asbestos, insurance coverage is triggered with initial exposure to the defective product and continues until final manifestation of injury. 667 F.2d at 1047. Plaintiff is likely to argue that *Keene* should apply under choice-of-law principles, and that it should extend to cases of property damage.

**11.** The *Eagle-Pitcher* court held that insurance coverage is not triggered until the injury manifests itself. 682 F.2d at 19.

**12.** *See Lac D'Amiante du Quebec, Ltee. v. American Home Insurance Co.,* 613 F.Supp. 1549, 1559 (D.N.J.1985).