**VEROSOL B.V. and Verosol U.S.A., Plaintiffs,**

**v.**

**HUNTER DOUGLAS, INC. and Bloch Enterprises, Inc., d/b/a/ Wythe Contract Sales, Defendants.**

**Civ. A. No. 4:92cv23.**

United States District Court,
E.D. Virginia,
Newport News Division.

Nov. 5, 1992.

583

Avery Tillinghast Waterman, Jr., Patten, Wornom & Watkins, Newport News, Va., Leonard J. Marsico, David R. Kuhn, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for plaintiffs Verosol B.V. and Verosol USA.

Molly Boyd Joseph, Jones, Blachman, Woltz & Kelly, P.C., Newport News, Va., for defendant Hunter–Douglas, Inc.

Joe Samuel Frank, Leonard Claro Heath, Frank, Gordon & Heath, Newport News, Va., for defendant Bloch Enterprises, Inc.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Verosol B.V., a Netherlands corporation, ("Verosol") and Verosol USA, a Pennsylvania corporation and Verosol's American subsidiary, ("Verosol USA") initiated this declaratory judgment action under 28 U.S.C. § 2201 (1988) against Hunter–Douglas, Inc. ("Hunter–Douglas"), a Delaware corporation, and Bloch Enterprises, Inc. ("Bloch"), a Virginia corporation, seeking a declaration that a License Agreement entered into between Verosol and Hunter–Douglas was terminated by Verosol according to the terms of the Agreement.

Bloch filed motions to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) contending that, because it was not a party to the Agreement and was not granted rights thereunder, there is no case or controversy between it and plaintiffs and that, for the same reasons, the complaint fails to state a claim against it upon which relief can be granted. Hunter–Douglas filed a motion to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(2) on the ground that this court lacks personal jurisdiction over it. As an alternative to dismissal, Hunter–Douglas asks this court to transfer the action to the United States

District Court for the District of New Jersey (Newark Division) under 28 U.S.C. § 1404(a) (1988), or, if venue is not proper in this court, under 28 U.S.C. § 1406(a) (1988).

Pursuant to a referral order under 28 U.S.C. § 636(b)(1)(B) (1988), the Magistrate Judge conducted a hearing and issued a report recommending that Bloch's motion to dismiss be denied. Defendants filed timely objections and plaintiffs have responded. The motions have been fully briefed and argued by the parties.[1]

For the reasons set forth below, upon *de novo* review of the Magistrate Judge's report and recommendation, *see* 28 U.S.C. § 636(b)(1)(C) (1988); Fed.R.Civ.P. 72(b), the court grants Bloch's motion to dismiss. Furthermore, assuming, without deciding, that plaintiffs have met their *prima facie* burden of proving that Hunter–Douglas is subject to personal jurisdiction in this forum, and venue is therefore proper under 28 U.S.C. § 1391(c) (1988), the court holds that this action should be transferred to the federal court in New Jersey pursuant to 28 U.S.C. § 1404(a). Moreover, even if personal jurisdiction were lacking, and venue were therefore improper under § 1391(c), transfer would be appropriate under 28 U.S.C. § 1406(a).

### STATEMENT OF FACTS

The facts as alleged in the Amended Complaint are as follows. By assignment, Verosol owns all of the right, title, and interest in and to United States Patent No. 3,946,788 for "Foldable Curtain Screen or Blind Construction and a Method for Producing Curtain Blind Construction" ("'788 Patent"). Pursuant to a License Agreement dated October 2, 1984, Verosol granted Hunter–Douglas, a manufacturer and distributor of window coverings, "a personal, non-exclusive, non-transferable right and license under the '788 patent for Hunter–Douglas to itself manufacture, assemble and sell blinds or have its fabricators assemble and sell its blinds … according to

the method and construction as claimed in said patent." In return for the right to use the patent, the Agreement requires Hunter–Douglas to, among other things, pay Verosol royalties and file quarterly reports regarding sales of products on which royalty payments are due. The License Agreement gives each party the right to terminate the Agreement upon the material default of the other party if, after receiving written notice, the default is not cured within thirty days.

On March 13, 1991, Verosol, through Verosol USA, notified Hunter–Douglas in writing that Hunter–Douglas had materially defaulted its obligations under the License Agreement by failing to provide reports and pay accrued royalties, and that Hunter–Douglas had thirty days to cure. Hunter–Douglas allegedly failed to cure and, on May 22, 1991, Verosol notified Hunter–Douglas in writing that the Agreement was terminated. After Verosol terminated the Agreement, Hunter–Douglas admitted that approximately $40,000 in royalties would have been due on July 12, 1991 had the Agreement not been terminated and further anticipated paying $40,000–45,000 in future royalties. Verosol allegedly refused requests by Hunter–Douglas to reinstate the Agreement.

Thereafter, Hunter–Douglas sent a check to Verosol in the amount of $85,000, representing its admitted past due and anticipated future royalties. By letter dated October 21, 1991, Verosol advised Hunter–Douglas that Verosol deposited the check into an escrow account, from which it issued Hunter–Douglas a check for $45,000. In so doing, Verosol reiterated that it refused to reinstate the Agreement. Verosol also advised Hunter–Douglas that Verosol had issued a check to Verosol USA in the amount of $36,000, which represented the pre-termination royalties owed by Hunter–Douglas. Verosol further stated that it was holding the remaining $4,000 in escrow pending a determination of additional royalties due. Hunter–Douglas promptly re-

---

1. Additional motions pending before the court are Bloch's motion for sanctions against plaintiffs pursuant to Fed.R.Civ.P. 11 and plaintiffs' motion for summary judgment pursuant to Fed. R.Civ.P. 56.

turned the $45,000 check to Verosol, claimed that the Agreement was still in effect, and expressed its intention to continue to use the '788 Patent.

On March 25, 1992, Verosol and Verosol USA filed an Amended Complaint against Hunter–Douglas and Bloch seeking a declaratory judgment that the License Agreement between Verosol and Hunter–Douglas was terminated on May 22, 1992. The Amended Complaint does not seek relief for patent infringement. Hunter–Douglas is a party to the License Agreement; Bloch is not. Nevertheless, with regard to Bloch, the Amended Complaint asserts that, "pursuant to a claim of right derived indirectly from Defendant, Hunter–Douglas, Inc. and its alleged rights under the License Agreement," Bloch has sold and continues to offer to sell blinds within the claims of the '788 Patent.

At oral argument, plaintiffs' counsel admitted that one of the reasons Bloch, a local retailer, has been joined as a defendant in this action, despite selling only two Hunter–Douglas shades allegedly within the claims of the '788 patent, is to take advantage of this court's efficient docket system. Bloch's presence is, of course, irrelevant to whether this court has personal jurisdiction over the non-resident defendant licensee Hunter–Douglas, or whether venue is proper in this court. *See* 28 U.S.C. § 1391(c). Bloch's presence is highly relevant, however, to Hunter–Douglas' motion to transfer this action to federal district court in New Jersey because such transfers can only be made to a district in which the action originally could have been brought. *See, e.g.,* 28 U.S.C. §§ 1404(a) & 1406(a); *Hoffman v. Blaski,* 363 U.S. 335, 342–44, 80 S.Ct. 1084, 1088–90, 4 L.Ed.2d 1254 (1960); *City of Virginia Beach v. Roanoke River Basin Ass'n,* 776 F.2d 484, 489 (4th Cir.1985). Because the district court in New Jersey cannot assert personal jurisdiction over Bloch, the effect of naming Bloch as a defendant—assuming Bloch is a proper defendant—is to prevent transfer of this action to that district.

## DISCUSSION

### I. *Bloch's Motions.*

█ Plaintiffs brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988), which provides in pertinent part:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a); *see also* Fed.R.Civ.P. 57. The remedy afforded by the Declaratory Judgment Act is available only in a "case of actual controversy." This requirement reflects, as it must, the limitation on the judicial power imposed by Article III of the Constitution that restricts the exercise of such power to "cases" and "controversies". *E.g., Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). To determine whether a controversy exists in a declaratory judgment action that comports with the requirements of Article III, the test is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *see also Mobil Oil Corp. v. Attorney Gen. of Va.,* 940 F.2d 73, 75 (4th Cir.1991). "The difference between an abstract question and a 'controversy' ... is necessarily one of degree." *Maryland Casualty,* 312 U.S. at 273, 61 S.Ct. at 512.

In light of these principles, the court first addresses Bloch's motion to dismiss for lack of subject matter jurisdiction. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) (holding that a "court should consider [a] Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (quoting 5

Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1350, p. 548 (1969); *Cf. Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (observing that motion dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction). In support of this motion, Bloch primarily contends that because it is merely a retailer (not a fabricator), is not a party to the License Agreement, and is not granted any rights thereunder, there is no justiciable case or controversy between it and plaintiffs in this action, which seeks only a declaratory judgment that the License Agreement between Verosol and Hunter–Douglas is terminated.

Plaintiffs argue that a controversy exists because Bloch allegedly has sold two shades and continues to offer to sell products manufactured by Hunter–Douglas or its fabricators that allegedly infringe the '788 Patent. If the Agreement is terminated, plaintiffs argue, Bloch can be held liable for patent infringement. *See, e.g., American Chem. Paint Co. v. Thompson Chem. Corp.*, 244 F.2d 64, 67 (9th Cir. 1957). Plaintiffs therefore claim that it is necessary to bind Bloch to any declaration in this action to prevent Bloch from relitigating in any future infringement action brought against Bloch the validity of the termination of the License Agreement. In support of this argument, plaintiffs further contend that non-parties to a contract are frequently parties to a declaratory judgment action involving the contract that will affect the third party's rights.

■ As an initial matter, the court observes that whether there is a controversy necessarily turns on the parties' interest in relation to the particular relief sought. Here, although the License Agreement concerns the right to manufacture and sell a patented product, this declaratory judgment action sounds in contract; plaintiffs do not seek relief for patent infringement. *See, e.g., Luckett v. Delpark, Inc.*, 270 U.S. 496, 502–03, 510–11, 46 S.Ct. 397, 399, 401–02, 70 L.Ed. 703 (1926); *Air Products & Chems., Inc. v. Reichhold Chems., Inc.*, 755 F.2d 1559, 1562 (Fed.Cir.), *cert. dismissed*, 473 U.S. 929, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985). Because plaintiffs have chosen to proceed in this manner, the scope and effect of the rights conferred by the License Agreement, and whether the License Agreement has been terminated, will be determined under principles of contract law. Accordingly, case law cited by plaintiffs establishing that a seller of infringing products, such as Bloch, can be sued for patent infringement, *see, e.g., American Chem. Paint*, 244 F.2d at 67, does not control the question of whether there is a controversy between the parties in this contract action.

Hunter–Douglas apparently negotiated the License Agreement with Verosol from Hunter–Douglas' principal place of business in New Jersey and executed the agreement in New Jersey as well, thereby accepting a license from Verosol to practice the '788 Patent. Hunter–Douglas argues, without contradiction from plaintiffs, and the court finds, that under Virginia choice of law rules, which apply in this diversity action, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), the law of New Jersey controls the contract interpretation questions presented in this declaratory judgment action. *See, e.g., Atlantic Permanent Fed. Sav. & Loan Ass'n v. American Casualty Co.*, 839 F.2d 212, 214 n. 4 (4th Cir.), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Crosson v. Conlee*, 745 F.2d 896, 902 (4th Cir. 1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985).

Under well-settled principles of contract law, a stranger to a contract ordinarily has no rights under the contract and cannot sue to enforce it. *See, e.g.,* 2 Samuel Williston *A Treatise on the Law of Contracts* § 347 (3d ed. 1959) ("Williston on Contracts"). Under certain circumstances, however, a third party may acquire enforceable rights under a contract. *See, e.g., Broadway Maintenance Corp. v. Rutgers State Univ.*, 90 N.J. 253, 447 A.2d 906, 909–10 (1982); *Rieder Communities, Inc. v. Township of N. Brunswick*, 227 N.J.Super. 214, 546 A.2d 563, 566–67 (Ct.App. Div.), *cert. denied*, 113 N.J. 638, 552 A.2d

164 (1988); 2 *Williston on Contracts* § 347. Under New Jersey law, the test for determining whether a third party has such rights is whether the contract or surrounding circumstances indicate that the contracting parties intended that the third party receive a benefit from the contracted for promise or performance that might be enforced in the courts. *See, e.g., Broadway Maintenance,* 447 A.2d at 909; *Rieder Communities,* 546 A.2d at 566–67; *see also* 2 *Williston on Contracts* § 356. Unless such an intent is present, the third party has no judicially enforceable rights under the contract even though the party may derive an incidental or implied benefit from the parties' performance under the contract. *See, e.g., Broadway Maintenance,* 447 A.2d at 909 (holding that person who is only an incidental third party beneficiary has "no contractual standing"); *Rieder Communities,* 546 A.2d at 566–67; 2 *Williston on Contracts* § 356; *Gold Mills Inc. v. Orbit Processing Corp.,* 121 N.J.Super. 370, 297 A.2d 203, 204 (Law Div.1972).

In this case, it is undisputed that Bloch is not a party to the License Agreement. Moreover, Bloch derives no rights directly from the Agreement because the Agreement confers a personal license to assemble and sell products practicing the '788 Patent only on Hunter–Douglas and its fabricators. It is undisputed that Bloch is not a fabricator. Any benefit that individual retailers, such as Bloch, derive from the License Agreement to resell patented products manufactured and sold by Hunter–Douglas or its fabricators is plainly incidental to the Agreement. Accordingly, Bloch has no judicially enforceable rights under the License Agreement, and it cannot be said that Hunter–Douglas and Verosol intended to confer such rights on individual retailers such as Bloch.

Plaintiffs' argument that Bloch must be a party to any action declaring the License Agreement invalid, in order to prevent Bloch from relitigating the Agreement's validity in a possible future infringement action, is therefore unpersuasive. Although nonparties are not bound by declaratory judgments, *Eagle–Picher Indus., Inc. v. Liberty Mut. Ins. Co.,* 682 F.2d 12,

16 n. 1 (1st Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983), it necessarily follows from Bloch's status as an incidental beneficiary to the License Agreement—not its status as a party in this action—that Bloch cannot litigate (or relitigate) the validity of that agreement in a subsequent patent infringement action in an attempt to enforce any incidental or implied rights thereunder. Bloch has no legal right or standing to do so. If, and when, the Agreement is terminated, Bloch simply cannot rely on it or, if Bloch chooses to base its future conduct on the continued existence of the Agreement, the purported termination of which has been made known to it, Bloch does so at its peril.

Plaintiffs nevertheless contend that noncontracting parties can be named defendants in declaratory judgment actions involving a contract when the judgment will affect their rights. In support of this contention, plaintiffs principally rely on a passage from Edwin Borchard *Declaratory Judgments* 259–60 (2d ed. 1941), which provides in relevant part:

> [I]n many cases a person is joined as a defendant [in a declaratory judgment action] not for the purpose of seeking any relief against him, but merely to give him an opportunity to appear and more especially to make the judgment against the principal binding upon him.

This observation is, of course, limited by the requirement that there be a concrete "controversy" between the plaintiff and the non-contracting defendant to justify naming the defendant as a party. Indeed, the primary example cited by Professor Borchard in support of this statement is the typical case of an insurer who seeks a declaratory judgment on an insurance policy and names as defendants both the insured and the injured party. *See id.* at 260 n. 20; *see also Maryland Casualty,* 312 U.S. at 271–72, 61 S.Ct. at 511–12.

In *Maryland Casualty,* for example, an injured party initiated an action in state court against an insured to recover for injuries sustained in an accident. The insurer subsequently commenced a declaratory judgment action in federal court seeking

a declaration of non-liability under the policy, and named the insured and the injured party as defendants. Although the injured party was not a party to the underlying insurance contract, the Supreme Court rejected the injured party's claim that there was no case or controversy between the injured party and the insurance company. 312 U.S. at 272–74, 61 S.Ct. at 511–13. In so holding, the Court observed that the injured party had a statutory right of action to proceed directly against the insurer to collect any judgment. *Id.* at 273, 61 S.Ct. at 512. The Court also noted that the injured party had the statutory right to satisfy the conditions precedent to recovery under the policy, such as notifying the insurer of the accident. *Id.* Given the possibility of inconsistent determinations in a later case commenced by the injured party against the insured to recover on the judgment, the Court concluded that the insured's interest was not "too remote" and that there existed a justiciable controversy. *See* 6A James N. Moore *et al., Moore's Federal Practice,* ¶ 57.19, p. 57–204 (1992) (commenting on soundness of decision in *Maryland Casualty* finding controversy between the insurer and the injured party because injured party was the real party in interest); *see also Travelers Indem. Co. v. Standard Accident Ins. Co.,* 329 F.2d 329, 330 (7th Cir.1964).

Unlike the insurance context, where injured parties generally have an independent statutory right to proceed against the insurer directly to satisfy any judgment, *see, e.g., Bray v. Insurance Co. of Pa.,* 917 F.2d 130, 133 (4th Cir.1990); *Federal Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 354 & nn. 5–6 (3d Cir.1986), Bloch has no such rights to preserve or assert against plaintiffs. Moreover, as discussed above, Bloch has no rights under the License Agreement that it later can enforce against Verosol.[2] There is, consequently, no danger of any

inconsistent determination in another action if Bloch is not a party to this action.

Under these circumstances, the court holds that there is no justiciable controversy between plaintiffs and Bloch. Bloch's interest in this controversy, as a matter of degree, is far too remote to make it a proper party to this declaratory judgment action. *See Maryland Casualty,* 312 U.S. at 273–74, 61 S.Ct. at 512–13. The court is therefore without subject matter jurisdiction in this case as it relates to Bloch. In light of the ruling on the subject matter jurisdiction, this court need not address Bloch's motion to dismiss under Fed. R.Civ.P. 12(b)(6).

## II. *Hunter–Douglas' Motions.*

The court first addresses Hunter–Douglas' motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). Once jurisdiction is so challenged, the plaintiff has the burden to prove by a preponderance of the evidence that the defendant is subject to personal jurisdiction in the forum. *E.g., Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *Abel v. Montgomery Ward Co.,* 798 F.Supp. 322, 324 (E.D.Va.1992). When, as here, the jurisdictional challenge is decided on the pleadings, affidavits, and documents submitted, the plaintiff must make a *prima facie* showing that a sufficient basis exists for this court to assert jurisdiction over the defendant. *E.g., Combs,* 886 F.2d at 676. In determining whether the plaintiff has met this *prima facie* burden, the court construes the pleadings, affidavits, and documents in the light most favorable to the plaintiff. *E.g., Combs,* 886 F.2d at 676; *Abel,* 798 F.Supp. at 324.

■ Plaintiffs first claim that non-resident defendant Hunter–Douglas is subject to personal jurisdiction under Virginia's long-arm statute, which provides in relevant part:

tory judgment action seeking to declare illegal a government contract awarded to its competitor. Plaintiff did not, however, assert any rights under the contract, but instead challenged the process and procedures used by the government to award the contract.

2. Additional case law cited by plaintiffs in support of their contention that Bloch is a proper party in this declaratory judgment action, though not a party to the License Agreement, *see, e.g., Cessna Aircraft Co. v. Brown,* 452 F.Supp. 1245 (D.D.C.1978), is inapposite. In *Cessna,* for example, plaintiff brought a declara-

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action *arising from* the person's:

    1. Transacting any business in this Commonwealth; [or]

    2. Contracting to supply services or things in this Commonwealth.

B. When the jurisdiction over a person is based solely upon this section, only a cause of action *arising from* acts enumerated in this section may be asserted against him....

2 Va.Code Ann. § 8.01–328.1 (Michie 1992) (emphasis added). If the long-arm statute applies, the court must then determine whether asserting personal jurisdiction over Hunter–Douglas thereunder comports with the Due Process Clause of the Fourteenth Amendment. *See, e.g., City of Virginia Beach*, 776 F.2d at 487; *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir.1982); *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941, 942 (E.D.Va.1991).

Plaintiffs claim that Bloch's sale of two Hunter–Douglas blinds, as well as Hunter–Douglas' shipment of products into Virginia, mean that Hunter–Douglas is "transacting business" in Virginia. Plaintiffs also claim that Hunter–Douglas' alleged threat of continued sales of products that fall within the claims of the License Agreement is an example of "contractual wrongdoing" subjecting Hunter–Douglas to suit in Virginia.

By its terms, the long-arm statute plainly confers jurisdiction only over claims that "arise from" a defendant's acts in Virginia. *E.g., City of Virginia Beach*, 776 F.2d at 487; *Chedid*, 756 F.Supp. at 943; *Eastern Scientific Mktg., Inc. v. Tekna–Seal, Inc.*, 696 F.Supp. 173, 176 (E.D.Va.1988). Exercising jurisdiction over claims arising out of a defendant's forum-affiliating contacts generally is referred to as "specific jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984). Such long-arm jurisdiction can

be based on a single forum-affiliating act by the defendant provided the cause of action arises out of that act. *See, e.g.,* 2 Va.Code Ann. § 8.01–328.1; *City of Virginia Beach*, 776 F.2d at 487. Assuming for present purposes only that Hunter–Douglas transacts business in Virginia or that the allegedly threatened future sales of the patented product would be a sufficient jurisdiction-creating act under the long-arm statute, plaintiffs still must demonstrate that their cause of action "arises from" these acts. *See, e.g., City of Virginia Beach*, 776 F.2d at 487–88; *Chedid*, 756 F.Supp. at 943.

"In order for a cause of action to arise from business transacted in Virginia [or from a contract to supply goods here], the activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim." *City of Virginia Beach*, 776 F.2d at 487; *see also Tekna–Seal*, 696 F.Supp. at 176; *Furmanite Am., Inc. v. Durango Assocs., Inc.*, 662 F.Supp. 348, 349 (E.D.Va. 1986). The plain meaning of the phrase "arising from" is "caused by." *Chedid*, 756 F.Supp. at 943. Thus, for a cause of action to "arise from" acts relied on for personal jurisdiction, there must "be a causal link between the acts ... and the cause of action asserted." *Id.*

■ Measured against this standard, plaintiffs' claim that personal jurisdiction can be asserted over Hunter–Douglas under Virginia's long-arm statute must fail. Plaintiffs' seek a declaratory judgment that the License Agreement was properly terminated because Hunter–Douglas failed to perform its royalty payment and reporting obligations under the License Agreement between Verosol and Hunter–Douglas; they do not seek a declaration of patent infringement. Plainly, Hunter–Douglas' alleged failure to perform under the Agreement is not directly related to or caused by any Virginia activities. The business Hunter–Douglas allegedly transacted in Virginia is irrelevant to the issue of whether the Agreement is terminated.[3]

3. For similar reasons, plaintiffs' reliance on a "stream of commerce" theory as a basis for this

*Compare Tekna–Seal,* 696 F.Supp. at 176–77 (cause of action seeking, among other things, damages for sales commissions owed arose from defendant's Virginia activity where plaintiff's commission was calculated based on sales to Virginia clients).

For similar reasons, plaintiffs' assertion that Hunter–Douglas has threatened to continue shipping products into Virginia provides no basis upon which to exercise long-arm jurisdiction over Hunter–Douglas. Whether such alleged shipments occur has no bearing on the issue presented in this declaratory judgment action, namely whether the License Agreement between Verosol B.V. and Hunter–Douglas has been terminated.

Accordingly, because plaintiffs' cause of action does not "arise from" Hunter–Douglas' alleged jurisdiction-conferring acts, the long-arm statute is an insufficient basis upon which to assert personal jurisdiction over Hunter–Douglas.

Plaintiffs next contend that, based on the volume and value of goods that Hunter–Douglas ships into this State, Hunter–Douglas is doing or transacting business in Virginia (though not authorized to do so) and is subject to this court's jurisdiction on that basis. *See* 3 Va.Code Ann. § 13.1–758 (Michie Cum.Supp.1992) (providing that foreign corporation that does business in Virginia without a certificate of authority may be sued in this state and process served on the corporation by serving any officer, director, or agent or on the clerk of the Virginia Corporation Commission); Fed. R.Civ.P. 4(e).[4] In support of its contention that Hunter–Douglas is doing business in Virginia, plaintiffs have submitted summaries they prepared of Hunter–Douglas invoices showing substantial shipments of Hunter–Douglas products into Virginia. The summaries list the date and recipient of the shipment together with the number of goods shipped and their corresponding value. According to these summaries, between January 1989 and May 1992, Hunter–Douglas shipped into Virginia approximately 37,800 products worth more than $2,286,700. Plaintiffs also claim, based on an affidavit prepared by a legal assistant employed by plaintiffs' counsel, that four Virginia retailers who carry Hunter–Douglas products received sample books from Hunter–Douglas.

Hunter–Douglas counters that it has no office, plant, equipment, employees, operations, or phone number in Virginia; is not registered with the Virginia Corporation Commission or otherwise licensed or qualified to do business in Virginia; and has no agent for the service of process in Virginia. Hunter–Douglas also contends, without affidavit support, that it did not engage in activity purposefully directed to Virginia because the Virginia shipments were made

---

court to assert personal jurisdiction over Hunter–Douglas is unavailing. Although the exact contours of this theory remain unsettled, *see Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 108–13, 107 S.Ct. 1026, 1030–32, 94 L.Ed.2d 92 (1987) (plurality), the theory is based on notions of specific jurisdiction and may confer personal jurisdiction over a non-resident defendant, generally in a product liability action, when the defendant places its product into the stream of commerce expecting the product to be purchased by consumers in the forum state and the allegedly defective product thereafter causes injury in the forum. *See, e.g., Asahi,* 480 U.S. at 105–06, 108–113, 107 S.Ct. at 1028–29, 1030–1032; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 289–90, 297–98, 100 S.Ct. 559, 563, 567–68, 62 L.Ed.2d 490 (1980); *Weight v. Kawasaki Motors Corp.,* 604 F.Supp. 968, 969–70 (E.D.Va.1985). This theory is inapplicable in the present case because, among other things,

the cause of action plainly does not arise from Hunter–Douglas products in the forum.

**4.** According to the return of service, plaintiffs served Hunter–Douglas by serving Hunter–Douglas' registered agent in Delaware. Although this service does not comport with § 13.1–758, this defect is cured by 2 Va.Code Ann. 8.01–288 (Michie 1992), which provides that "[e]xcept for process commencing actions for divorce or annulment of marriage, process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted in the manner provided in this chapter." Although service is not therefore defective, plaintiffs must still establish that Hunter–Douglas is actually "doing business" in Virginia in order to maintain this action against Hunter–Douglas. *Pennington v. McDonnell Douglas Corp.,* 576 F.Supp. 868, 871–72 (E.D.Va.1983).

upon request. *See Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 658–59 (4th Cir.1989). According to Hunter–Douglas, these shipments were primarily "drop shipments," *i.e.,* shipments made at the request of and as an accommodation to non-resident distributors. *See Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818, 821 (4th Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973). As an example, Hunter–Douglas argues, without supporting affidavits, that of the $1,770,-681 in revenues earned on shipments to Virginia in 1989 and 1990, $1,449,757.40 resulted from shipments made at the request of a North Carolina fabricator. Hunter–Douglas also argues, based on an affidavit of Hunter–Douglas' Senior Vice–President for Operations, that Hunter–Douglas has no records of soliciting customers in Virginia.

Consistent with the requirements of the Due Process Clause of the Fourteenth Amendment, personal jurisdiction can be asserted over a non-resident defendant only if the defendant has purposefully established certain "minimum contacts" with the forum state such that the assertion of jurisdiction would "not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *Lake Shore,* 886 F.2d at 658–59. Jurisdiction is therefore proper when a defendant's purposeful contacts create a "substantial connection" to the forum State, such as by creating "continuing obligations" with residents of the forum or by conducting "significant activities" in the forum. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2184; *see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.")

Because plaintiffs' cause of action does not arise out of Hunter–Douglas' shipment of goods into the forum, jurisdiction is appropriate only if there exists "general jurisdiction" over Hunter–Douglas, *see, e.g., Helicopteros* 466 U.S. at 414 & n. 9, 104 S.Ct. at 1872 & n. 9; *Witt v. Reynolds Metals Co.,* 240 Va. 452, 397 S.E.2d 873 (1990), such that Hunter–Douglas would be answerable in this forum to any plaintiff, resident or not, on any cause of action. In determining whether there exists general jurisdiction over a non-resident defendant, a court must examine not only the quantity, but also the nature, of the defendant's forum-affiliating contacts. *See, e.g., International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159 (recognizing that in some cases, "continuous corporate operations within a state [are] thought so substantial *and of such a nature* as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.") (emphasis added); *Ratliff v. Cooper Lab., Inc.,* 444 F.2d 745, 748 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971). To establish general jurisdiction over a non-resident defendant, as opposed to specific jurisdiction, plaintiffs must demonstrate "fairly extensive" contacts between the defendant and the forum. *Ratliff,* 444 F.2d at 748.

The mere fact that a defendant ships products into a state is, of course, not alone sufficient to establish that the defendant is doing or transacting business in the state. Rather, as discussed above, the shipments must be the result of the defendant's purposefully availing itself of the privilege of conducting business in the forum state. For example, in *Lake Shore,* the United States Court of Appeals for the Fourth Circuit held that a non-resident defendant's sales into South Carolina were not sufficient to confer personal jurisdiction over the non-resident defendant where the sales were initiated by in-state customers, were not the result of defendant's solicitation, and the products were shipped f.o.b. Michigan. 886 F.2d at 658–59. *See also Carnegie v. Art Metal Constr. Co.,* 191 Va. 136, 60 S.E.2d 17 (1950) (affirming lower court determination that a non-resi-

dent defendant manufacturer was not "doing business" in Virginia where sixteen local independent retailers sold the manufacturer's products in the Commonwealth and the defendant supplied the retailers with catalogs but where the retailers ordered the products from the defendant, with shipment f.o.b. New York, and where visits by defendant's employees were at the retailer's request). Similarly, in *Ajax Realty*, our Court of Appeals declined to hold that a manufacturer transacted business in Virginia within the meaning of the long-arm statute merely by shipping products into Virginia as an accommodation to a non-resident independent distributor. 493 F.2d at 821.

Considering these standards, the court doubts that plaintiffs ultimately could establish that Hunter–Douglas is doing business in Virginia such that this court could assert general jurisdiction over Hunter–Douglas. However, given that no evidentiary hearing has been held on this jurisdictional issue and given the value, volume, and apparent regularity of Hunter–Douglas' shipments into Virginia, and considering the paucity of relevant information in the responsive pleadings filed by Hunter–Douglas, plaintiffs may well have made a *prima facie* showing that Hunter–Douglas is subject to personal jurisdiction in this forum sufficient to avoid dismissal on jurisdictional grounds at this stage of the case. *See Combs*, 886 F.2d at 676 (noting "tolerant nature of *prima facie* test.")

■ In any event, the court need not resolve this jurisdictional dispute because assuming personal jurisdiction exists over Hunter–Douglas, and venue is proper under 28 U.S.C. § 1391(c), transfer of this action to New Jersey is appropriate under 28 U.S.C. § 1404(a).[5] Under § 1404(a), transfer of an action to another "district or division where it might have been brought" is appropriate "for the convenience of the parties and witnesses" and "in the interest of justice." Because the parties have agreed that this action could have been brought in the United States District Court

for the Eastern District of New Jersey, Newark Division, the court must consider only whether the action should be transferred there.

In determining whether to grant a motion to transfer under § 1404(a), a court considers and balances a variety of factors, including the convenience of the parties and witnesses; the cost of obtaining the attendance of witnesses; the availability of compulsory process; the interest in having local controversies decided at home; in diversity cases, the court's familiarity with the applicable law; and the interest of justice. *See, e.g., Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253, 1256 (E.D.Va.1988); *Tekna–Seal*, 696 F.Supp. at 180 n. 13. Although these factors are essentially the same as those considered to determine whether to dismiss an action under the common law doctrine of forum non conveniens, *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), § 1404 vests courts with broader discretion "to grant transfers upon a lesser showing of inconvenience" than is required to obtain dismissal under the doctrine of forum non conveniens. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). The decision whether to transfer an action is committed to the sound discretion of the district court. *See, e.g., Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir.), *cert. denied*, 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956).

■ The burden is on the moving party to show that transfer to another forum is proper. *E.g., Kraft v. Hoskins*, 311 F.Supp. 1404, 1405 (E.D.Va.1970). In balancing the relevant factors, the plaintiff's choice of forum ordinarily is accorded considerable weight. *See, e.g., Chedid*, 756 F.Supp. at 945; *Baylor Heating*, 702 F.Supp. at 1256. However, when, as here, a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.

---

5. For the same reasons, it is not necessary to decide whether Verosol's own skimpy showing on the issue of jurisdiction satisfies its *prima facie* burden.

See, e.g., Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 990 (E.D.N.Y.1991); Baylor Heating, 702 F.Supp. at 1256–57; Turner & Newall, PLC v. Canadian Universal Ins. Co., 652 F.Supp. 1308, 1310 (D.D.C.1987).

Plaintiffs in the instant case rely on the usual deference accorded a plaintiff's chosen forum in resisting Hunter–Douglas' motion to transfer. However, given that neither plaintiff is suing in its home forum (Verosol B.V. is a Netherlands corporation, and Verosol USA is a Pennsylvania corporation with its principal place of business in Pittsburgh), and considering that the cause of action is at best only tenuously related to this forum, plaintiffs' initial venue choice will not impede transfer if the relevant § 1404(a) factors point to another forum.

With regard to convenience of the parties and witnesses, the court concludes that these factors point strongly to New Jersey as a preferable forum. Hunter–Douglas' principal place of business is in New Jersey and the documentary evidence concerning the contract termination issue is at Hunter–Douglas' New Jersey headquarters. Moreover, according to the affidavit submitted by Hunter–Douglas' Senior Vice-President of Operations, the witnesses expected to testify on behalf of Hunter–Douglas on the issue of contract termination reside in New Jersey or its environs. Accordingly, it is beyond serious question that litigating the action in New Jersey will substantially reduce the time, expense, and possible disruption to Hunter–Douglas' business operations that trial in the Eastern District of Virginia would entail.

In contrast, plaintiffs have not demonstrated that they or their witnesses will incur any greater burden if the action is tried in New Jersey. As mentioned above, Verosol is a Netherlands corporation and Verosol USA is a Pennsylvania corporation with its principal place of business in Pittsburgh. At oral argument, plaintiffs' counsel represented that he had at that time identified two witnesses who would testify on behalf of plaintiffs, one in Holland and one in Pennsylvania. Although plaintiffs claim that transferring the action to New Jersey would merely "shift inconveniences" away from Hunter–Douglas to them, see, e.g., Tekna–Seal, 696 F.Supp. at 180, plaintiffs have offered no reason why this is so. Travel from Pennsylvania and Holland to New Jersey would not seem to entail greater inconvenience than travel to Newport News, Virginia. Indeed, travel from Holland to New Jersey would arguably be more convenient given the proximity of Newark to major airports in New York and New Jersey.

Under these circumstances, the convenience of the parties and witnesses points strongly to trial in New Jersey. See, e.g., Baylor Heating, 702 F.Supp. at 1259; Anchor Sav. Bank v. Transamerica Ins. Co., 634 F.Supp. 398, 400–01 (S.D.N.Y.1986) (observing that "[w]here a plaintiff's chosen forum has little or no relation to the material facts of the case so that he may not rely on the deference ordinarily given his choice, he cannot by conclusory recitations of inconvenience defeat a defendant's transfer motion which is supported by a factual showing of greater convenience in the transferee forum.").

Additional factors favoring transfer are that New Jersey has a greater interest in the subject matter of this declaratory judgment action than does Virginia and that, as discussed above, New Jersey law will apply to the issue of contract termination. Although the choice of law factor is not controlling, it is preferable to have cases decided by courts familiar with the substantive law to be applied. See, e.g., Gilbert, 330 U.S. at 509, 67 S.Ct. at 843; Hernandez, 761 F.Supp. at 991; Chedid, 756 F.Supp. at 944.

Therefore, given the reduced deference accorded plaintiffs' choice of forum, the greater convenience to Hunter–Douglas and its witnesses if trial is held in New Jersey, the absence of any heightened burden on plaintiffs or their witnesses in the event of transfer, the applicability of New Jersey law, and the lack of any material connection between the parties, the cause of action, and this forum, the court concludes that it would serve the interest of justice to transfer this action to the United

States District Court for the District of New Jersey.

 The court further observes that even if there were no personal jurisdiction over Hunter–Douglas, and venue were not therefore proper in this district under 28 U.S.C. § 1391(c), transfer of this action would be appropriate under 28 U.S.C. § 1406(a). *See, e.g., Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962). Section 1406(a) allows transfer of an action in which venue is improper "to any district or division in which it could have been brought" if such transfer is "in the interest of justice." 28 U.S.C. 1406(a).

Section 1406(a) has been interpreted broadly to allow transfer where there are impediments to an adjudication on the merits, such as a lack of personal jurisdiction over the defendant, in a plaintiff's chosen forum. *See Goldlawr,* 369 U.S. at 465, 82 S.Ct. at 915; *Porter v. Groat,* 840 F.2d 255, 257–58 (4th Cir.1988) (citing cases). In this case, transfer to the United States District Court for the District of New Jersey, Newark Division, where plaintiffs and Hunter–Douglas concede Hunter–Douglas is subject to personal jurisdiction and venue is proper, would be in the interest of justice. Transfer would facilitate a more expeditious resolution of the merits of the controversy in a concededly proper forum and would avoid the costs and delay that would result from dismissal and refiling in New Jersey. *See Chedid,* 756 F.Supp. at 944–45 (discussing cost and time of refiling as factor in transferring under 28 U.S.C. 1404(a) where alternative to transfer was dismissal).

## CONCLUSION

Based on the foregoing, the court grants Bloch's motion to dismiss the action against it for lack of subject matter jurisdiction. The court further holds that, assuming plaintiffs have met their *prima facie* burden of proving that this court has personal jurisdiction over Hunter–Douglas, and, consequently, that venue in this district is proper, transfer of this action to the United States District Court for the District of New Jersey, Newark Division, is appropriate under 28 U.S.C. § 1404(a). Moreover, even if personal jurisdiction over Hunter–Douglas were lacking, and venue were improper, transfer of this action to New Jersey, as opposed to dismissal, would be appropriate under 28 U.S.C. § 1406(a).

As a result of these rulings, plaintiffs' motion for summary judgment will be decided by the transferee court. However, because Bloch is no longer a party to this case, and will not be before the transferee court, this court will decide Bloch's motion for sanctions pursuant to Fed.R.Civ.P. 11. *See Willy v. Coastal Corp.,* —— U.S. ——, —— – ——, 112 S.Ct. 1076, 1080–81, 117 L.Ed.2d 280 (1992). A hearing on Bloch's motion for sanctions previously has been scheduled for November 13, 1992 at 9:00 a.m.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is so ORDERED.