**CITY OF VIRGINIA BEACH, VIRGINIA, a political subdivision of the Commonwealth of Virginia and the United States of America, Appellees,**

v.

**ROANOKE RIVER BASIN ASSOCIATION; V. Earl Stanley, Jr.; Jesse L. Fowler, Jr.; Harold Carawan; Dr. Allan A. Hoffman, Defendants,**

**and**

**James G. Martin, Governor of the State of North Carolina, Appellant.**
**(Two Cases)**

**Nos. 85–1022(L), 85–1083.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 11, 1985.

Decided Nov. 1, 1985.

---

Andrew P. Miller, Washington, D.C. (Kenneth M. Simon, S. Audiway Peal, Karen M. Anderson, Washington, D.C., Beth L. Webb, Dickstein, Shapiro & Morin, Washington, D.C., Lacy H. Thornburg, Atty. Gen., Daniel C. Oakley, Sp. Deputy Atty. Gen., G. Criston Windham, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., on brief), for appellant.

John F. Kay, Jr., Richmond, Va. (M. Scott Hart, James E. Ryan, Jr., George A. Somerville, Mays, Valentine, Davenport & Moore, Richmond, Va., J. Dale Bimson, City Atty., Charles M. Salle, Deputy City Atty., Virginia Beach, Va., on brief), for appellees.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Two actions, one filed in the United States District Court for the Eastern District of Virginia and the other in the United States District Court for the Eastern District of North Carolina, seek to test the validity of the same pipeline permits issued to the City of Virginia Beach, Virginia, by the United States Army Corps of Engineers. In the action filed in Virginia, the city seeks a declaratory judgment that the permits and a water storage contract with the Corps are valid. The Roanoke River Basin Association, several of its officers and members, and the Governor of North Carolina, all of whom are opponents of the pipeline, are named as defendants. They are sued in their own right and as representatives of a class composed of other opponents. The United States has intervened as a plaintiff. The State of North Carolina filed its action in North Carolina against officers of the Corps of Engineers. The state seeks a declaration that the permits are invalid.

■ City officials and state officials insist that the validity of the permits be adjudicated by district courts sitting in their respective states. We find no justification for their parochial concerns. Federal law will determine the validity of the permits, and we are confident that a federal judge, whether sitting in Virginia or North Carolina, will faithfully and impartially decide this controversy.

This appeal is from an order entered in the action brought by the city in the Eastern District of Virginia. Nevertheless, we cannot be oblivious to the action pending in the Eastern District of North Carolina. The complaint in that case is part of the record before us, and by briefs and oral argument the parties have referred to the proceedings.

The Governor of North Carolina, James G. Martin,[1] appeals the district court's denial of his motion to dismiss for lack of personal jurisdiction. The district court determined that the Governor in his official capacity was amenable to service of process under provisions of the Virginia long-arm statute, Va.Code § 8.01–328.1. The court also found that subjecting the Governor to suit in Virginia would not violate due process. The court certified its order pursuant to 28 U.S.C. § 1292(b) and Fed.R. App.P. 5, and we granted permission to appeal. Because we believe that the requirements of the long-arm statute have not been met, we vacate the court's order and remand this case for disposition consistent with this opinion.[2]

I

North Carolina and Virginia have significant interests in the management of the Roanoke River, which drains a basin of nearly 10,000 square miles located entirely within the two states. The Buggs Island Reservoir on the lower Roanoke River was constructed pursuant to the Flood Control Act of 1944, 58 Stat. 887, and is supervised by the Army Corps of Engineers, 33 U.S.C. § 701b. The reservoir was designed to provide power production, flood control, and regulation of stream flow. In addition, the Flood Control Act contemplates that waters affected by flood control programs will be used for domestic and industrial consumption. See 33 U.S.C. § 708.

On April 27, 1978, the governors of North Carolina and Virginia entered into a formal agreement to hold continuing discussions about water resources of mutual interest to the two states. Pursuant to this

1. This action was originally brought against Governor James B. Hunt, Jr. When James G. Martin took office as Governor on January 5, 1985, he was substituted as a party in the district court, Fed.R.Civ.P. 25(d)(1), and in this court, Fed.R.App.P. 43(c)(1).

2. The district court also denied the Governor's motion to dismiss on the ground that suit against him was in effect a suit against North Carolina, which was barred by the state's sovereign immunity. The Governor has appealed this order pursuant to 28 U.S.C. § 1291 as a final collateral order. Because the district court did not have personal jurisdiction over the Governor, this aspect of the district court's order must also be vacated.

agreement, the governors established the North Carolina-Virginia Water Resources Management Committee which was to propose a joint water resources policy for the two states. The committee was cochaired by the North Carolina Secretary of Natural Resources and Community Development and the Virginia Secretary of Commerce and Resources, who were authorized to appoint all other members of the committee. The committee was not given power to bind either state.

The city of Virginia Beach participated in a number of committee meetings. One of the topics discussed was a proposal by the city to construct an 84.5 mile pipeline wholly within Virginia to bring as much as 60 million gallons of water a day from Lake Gaston, a part of the Buggs Island Reservoir, to Virginia Beach. The pipeline, which is designed to satisfy the demands for water of Virginia Beach and other communities until the year 2030, has a projected cost of at least $176,000,000. Discussions of the Virginia Beach proposal occurred from 1979 to 1983, but the committee was unable to reach an agreement.

On July 15, 1983, Virginia Beach unilaterally filed an application with the Corps of Engineers for authorization to construct the pipeline. After conducting public hearings at which representatives of North Carolina opposed the project, and after receiving comments, the Corps issued permits to Virginia Beach to build the pipeline. Later the city and the Corps contracted for water storage.

## II

█ Analysis of the Virginia long-arm statute involves two steps. The court must determine first whether the statutory language permits service of process on the defendant. If it does, the court must then determine whether exercise of personal jurisdiction over the defendant would offend the due process clause of the fourteenth amendment of the United States Constitution. *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir.1982). The Supreme Court of Virginia

has construed the long-arm statute to extend *in personam* jurisdiction to the limits of due process. *See John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971).

The district court held that the governor was amenable to suit in Virginia under two clauses of the long-arm statute, Va.Code § 8.01–328.1 A, which provide:

A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth; ... [or]
6. Having an interest in, using, or possessing real property in this Commonwealth ...

The importance of the phrase "cause of action arising from" is emphasized in subsection B of the statute:

When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him....

Thus, the statute confers no jurisdiction for the assertion of claims that do not arise from the defendant's acts in the state. Our initial inquiry, therefore, is whether the Virginia Beach suit is an action arising from the discussions, some of which occurred within Virginia, between the governors of North Carolina and Virginia and their representatives.

█ In order for a cause of action to arise from business transacted in Virginia, the activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim. "[A] single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts." *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 534–36, 238 S.E.2d 800, 802 (1977); *see Luke v. Dalow Industries, Inc.*, 566 F.Supp. 1470, 1472 (E.D.Va.1983).

■ The difficulty with the city's assertion of jurisdiction under the long-arm statute is its inability to show a cause of action arising from the Governor's acts in Virginia. The discussions about water resources imposed no obligation on either state with respect to the city's pipeline application to the Corps of Engineers, for the committee was merely advisory. The lack of connection between the relief the city requests and the water discussions is evident on the face of the city's complaint. Virginia Beach does not seek to compel the Governor to honor an agreement relating to the proposed pipeline. It does not even claim a right to compel him to negotiate about the pipeline. It asserts that his representatives opposed the pipeline while in Virginia, but it does not allege that this opposition in any way affects the validity of the permits. Consequently, the Governor has not transacted any business in Virginia from which the city's action arose.

■ We also conclude that the Governor's participation in hearings conducted in Virginia by the Corps of Engineers, was not an invocation of the benefits and protections of Virginia law sufficient to subject the Governor to service under Virginia's long-arm statute. The Governor's representatives did not select Virginia as a site for the hearings. Rather, they simply responded to notices given by the Corps and appeared at the hearing locations chosen by the Corps. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 785–87 (D.C. Cir.1983).

The district court also held that the governor was amenable to service of process in Virginia under the clause of Virginia's long-arm statute relating to "[h]aving an interest in, using, or possessing real property in this Commonwealth." Va.Code § 8.01–328.1 A(6). The court interpreted this section as conferring jurisdiction on Virginia courts on the ground that North Carolina's opposition to the pipeline "affect[s] real property in Virginia."

On appeal, Virginia Beach quite prudently does not press this reason for upholding jurisdiction. The requirement that a defendant have an interest in, use, or possess real property in Virginia connotes that through his connection with such property a defendant has availed himself of the "protection of the laws of [Virginia] and the machinery which is provided incident to real estate transactions." *Carmichael v. Snyder,* 209 Va. 451, 455, 164 S.E.2d 703, 706 (1968). Moreover, as *Carmichael* points out, the cause of action must arise from the defendant's interest in, use, or possession of real property. The Governor has no connection specified by the statute with real property in Virginia from which the city's cause of action arose, nor has he availed himself of Virginia laws incident to real property.

In sum, we conclude that the Governor is not subject to service of process under Virginia's long-arm statute. In view of our conclusion, we need not reach the Governor's constitutional plea that federalism and comity preclude a state or its political subdivisions from asserting jurisdiction by a long-arm statute over the governor of another state who participated in discussions and federal hearings of mutual concern to the people of both states.

### III

■ Although the district court lacks personal jurisdiction over the Governor, he need not be dismissed as a party. Instead, this action can be transferred to a district that has jurisdiction. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *O'Neal v. Hicks Brokerage Co.,* 537 F.2d 1266 (4th Cir.1976). Accordingly, Virginia Beach should be given an opportunity to move that the present action be transferred to the Eastern District of North Carolina and that upon transfer this action be consolidated with North Carolina's action challenging the validity of the Virginia Beach permit. Transfer and consolidation would appear to be particularly appropriate because the Governor has conceded in memoranda to the district court that the city may "assert any interest it claims in the dispute over the issuance of the permit in the [North Carolina] suit

against the Corps."[3] Transfer and consolidation would also advance the economical resolution of the controversy over the permits. The parties would be able to litigate in one court the same issues that were the subject matter of actions instituted in two courts. *See Jeffrey Galion, Inc. v. Joy Manufacturing Co.*, 323 F.Supp. 261, 267 (N.D.W.Va.1971). If the action is transferred and consolidated, the North Carolina court can realign the parties as their interests may appear.

■ Transfer, of course, can be made only to a district where the action could have been brought. But this requirement presents no obstacle. The Governor and the Roanoke River Basin Association are amenable to suit in the Eastern District of North Carolina. This leaves only the four individual defendants, who are residents of Virginia. These defendants are officers or members of the Association, and their interests are represented by it. From the tenor of the city's memoranda in the district court and its briefs on appeal, it appears that the city considers the Governor an indispensible party to the action brought in Virginia. If the district court determines that the Governor is an indispensible party, the Virginia defendants can be dismissed unless they choose to consent to the jurisdiction of the transferee. *See* Fed.R. Civ.P. 19(b). Alternatively, they can be severed. *See* 15 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3827 at 175; 1 *Federal Procedure* Lawyers Ed., § 1:727. Our discussion of transfer and consolidation should not be read as precluding any of the parties to this action from seeking to intervene in the North Carolina action.

The order of the district court denying the Governor's motions to dismiss is vacated, and the case is remanded. On remand, the district court should either dismiss the action against the Governor or entertain a motion to transfer it to the Eastern District of North Carolina with respect to all defendants who are subject to suit in that district. The district court should also determine whether defendants not subject to transfer should be dismissed pursuant to Rule 19(b). The Governor, having substantially prevailed, shall recover his costs.

VACATED AND REMANDED.

MURNAGHAN, Circuit Judge, concurring:

While the majority's analysis focuses primarily on the Virginia long-arm statute, it also implicitly holds that jurisdiction over the governor of North Carolina is barred by the constitutional requirements of due process. Although I am not content with that rationale, I nevertheless reach the same ultimate conclusion for other reasons:

(1) I deem it unnecessary to decide whether the cause of action here "arose from" one of the governor's contacts with Virginia, because in my view none of those contacts constitute "transacting any business" within the meaning assigned to that term by the Virginia legislature when it enacted the long-arm statute. While the governor's contacts may, as in my judgment they do, amount to "business" in the expansive colloquial sense of the word, the Virginia statute is primarily concerned with private business, and not with the conduct of state affairs by the principal executive officer of a sovereign. The proposition is, after all, as wide as it is long, and I have doubts that the Virginia legislature, operating in the sensitive area of state sovereignty, meant to define "business" in such a way as to extend jurisdiction over acts of state by governors of sovereigns of equal dignity, when that approach could lead other states to respond by extending jurisdiction over similar acts of state by the governor of Virginia. *Cf. Naartex Consulting Co. v. Watt*, 722 F.2d 779, 786 (D.C.Cir. 1983) (discussing interpretation of District

---

**3.** The Governor also stated to the district court that "Virginia Beach can easily intervene [in the North Carolina suit]."

He also represented to the district court that Virginia Beach can "obtain whatever relief it is entitled to in the dispositive litigation now pending in [North Carolina]," and "the city can easily join or be joined as a party."

of Columbia long-arm statute to preclude jurisdiction based on "government contacts").

However, in my view, on the facts here presented, the governor of North Carolina could constitutionally have been subjected to suit in Virginia. It is the proper interpretation of the Virginia statute, not the requirements of due process, that bars the exercise of jurisdiction in this case. While the Virginia courts have held that long-arm jurisdiction under the Virginia statute extends as far as is constitutionally permitted, *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971); *Carmichael v. Snyder*, 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968), I conclude that the case before us now presents a rare exception to that rule. Neither *Kolbe* nor *Carmichael* involved negotiations conducted on behalf of state governments; instead, both cases involved breach of contract claims arising from private business transactions. Thus, neither case presented the Virginia court with the opportunity to address the issue before us here. I would, in those circumstances, there being no binding decision of the Virginia Supreme Court, interpret the long-arm statute as I believe it would be construed by that court should the question ever be presented to it. Doing so, I conclude that the Virginia Supreme Court most probably would hold that the Virginia long-arm statute did not reach the governor of North Carolina, at least on the basis of his Virginia activities as developed in the record in the instant case.

(2) The cause of action here concerns the validity *vel non* of a permit issued by the Army Corps of Engineers. The path to the courtroom envisaged by the Administrative Procedure Act, 5 U.S.C. § 702, calls for a proceeding contesting the correctness, in whole or in part, of the issuance of the permit to be brought against the agency by a person who is "adversely affected or aggrieved by agency action." Virginia Beach and the other plaintiffs, however, are content with the permit in all its aspects, and the posture of the agency in this litigation is problematic. While the Declar-

atory Judgment Act, 28 U.S.C. §§ 2201-02, is often employed as a role reversing device in other situations, Virginia Beach's attempt to start the litigation by resort to that Act does not sit well where doing so contravenes the manifest purposes of the Administrative Procedure Act. I have doubts that the race to the courthouse we see here should have been permitted to be run.