**VILLAGE LANE RENTALS, LLC, et al., Plaintiffs,**

v.

**The CAPITAL FINANCIAL GROUP, et. al., Defendants.**

**H. Beck, Inc., et al., Third–Party Plaintiffs**

v.

**Equity Housing Fund XX, et al., Third–Party Defendants**

No. C.A. 5:00CV00061.

United States District Court, W.D. Virginia, Harrisonburg Division.

Aug. 9, 2001.

As Amended Aug. 14, 2001.

---

Douglas Michael Palais, Andrew Richardson Park, McCandlish, Kaine & Granty, Richmond, VA, for Plaintiffs.

Elizabeth Flannagan Edwards, Anne Bentley McCray, McGuire Woods, LLP, Richmond, VA, Edward S. Zusman, Liner, Yankelevitz, Sunshine & Regenstreif, LLP, San Francisco, CA, for Defendants.

### MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court is the third-party defendant's March 12, 2001 motion to dismiss for lack of in personam jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), or, in the alternative, to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. §§ 1391(a), 1406(a). The matter was submitted to the presiding Magistrate Judge for proposed findings of fact and a recommended disposition. On May 16, 2001, Magistrate Judge B. Waugh Crigler returned a Report and Recommendation, recommending that the court grant the third-party defendant's motion and dismiss the third-party complaint against it. The third party plaintiffs timely objected to the Report and Recommendation and the

third-party defendant responded thereto. The court has performed a *de novo* review. See 28 U.S.C. § 636(b)(1)(C). Having thoroughly considered the entire case and all relevant law, the court agrees with the reasoning of the Magistrate Judge and shall adopt the Report and Recommendation in its entirety.

### I.

In 1998, the Capital Financial Group ("CFG"), H. Beck, Inc. ("Beck"), Joseph Delamater ("Delamater"), and Steven R. Porter ("Porter"), (collectively, the "defendants") brokered a nationwide offering of interests in Equity Housing Fund XX ("EHF XX"), a California limited liability real estate investment partnership, the principal asset of which was Lakeview Terrace Apartments in Baytown, Texas. Village Lane Rentals, LLC, and BRS Development Corporation (the "plaintiffs"), whose members and shareholders, respectively, are all Virginia residents, invested in EHF XX. The returns on this investment, however, failed to meet the plaintiffs' expectations.

Discouraged by the poor performance of their investment in EHF XX, the plaintiffs filed a complaint on July 13, 2000, alleging that, during the course of the offering, the defendants knowingly and recklessly disseminated materially false and misleading information to the plaintiffs in violation of both federal and state securities laws.[1] Specifically, the plaintiffs assert that the defendants presented them with false and misleading information calculated to suggest that returns on the EHF XX investment would be much larger than those actually realized. For example, it is

---

1. Specifically, the plaintiffs assert that their action, "arises under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5), Section 20(a) of the Exchange Act, Section 11 of the

Securities Act, Section 12(1) of the Securities Act, Section 12(2) of the Securities Act, Section 15 of the Securities Act, Virginia Code § 13.1–502, and Virginia Code § 13 .1–507." (Compl. at 4.)

claimed that Delamater promised Robert and Kathleen Miller, the sole members of Village Lane Rentals, LLC, at least a 10%, and possibly 14% to 15%, annual return on their EHF XX investment. The Miller's received dividend checks for amounts significantly less than 10%. In addition, the plaintiffs maintain that the defendants sent them a Prospectus for Equity Housing Fund XX, dated June 22, 1998 (the "Offering Memorandum") which included exaggerated expected occupancy rates for Lakeview Terrace. Moreover, the plaintiffs claim that the defendants provided them with a document entitled "The ADS Report" which also contained allegedly false and misleading statements about the Lakeview Terrace occupancy rate.

On November 27, 2000, Beck, Delamater, and Porter (the "third-party plaintiffs") filed a third-party complaint against EHF XX, Equity Group 98, LLC ("EG 98"), Equity Housing Group ("EHG"), Charley Birkes, Linda Swenson, and Fainsbert, Mase & Snyder, LLP ("FM & S") (collectively, the "third-party defendants"). EG 98 is the general partner of EHF XX, and EHG is the managing partner of EG 98. Birkes is the president and a principal of EHG, and Swenson is the secretary and also a principal of EHG. Finally, and most relevant to the matter currently before the court, FM & S is a Los Angeles law firm engaged by EHF XX to assist in the preparation of the Offering Memorandum and to provide legal representation in connection with the sale of EHF XX partnership interests.

The third-party complaint alleges that Beck entered into a "Selected Dealer Agreement" (the "agreement") with EHF XX which provided that Beck would act as a non-exclusive dealer of EHF XX investments. The agreement included a provision indemnifying the "Selected Dealer" for any losses and liabilities under state or federal securities laws arising out of or based on the following:

> [A]ny untrue statement or alleged untrue statement of any material fact contained in the Memorandum...or aris[ing] out of or are based upon the omission or alleged omission to state therein any material fact or any fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading....(agreement ¶ 10.1)

The third-party plaintiffs maintain that because the plaintiffs' complaint is based, in part, on alleged misrepresentations in the Offering Memorandum, they are entitled to indemnification not only from EHF XX, but also from its law firm, FM & S. That is, because FM & S was a substantial contributor to the Offering Memorandum, the third-party plaintiffs assert that they are entitled to implied and equitable contractual indemnity from FM & S.

In response to the third-party complaint, FM & S filed a Rule 12(b) Motion, arguing that the law firm was not subject to personal jurisdiction in Virginia because (1) its actions were insufficient to confer jurisdiction under the Virginia long-arm statute and (2) it did not have minimum contacts with Virginia. The Magistrate Judge agreed. The third-party plaintiffs object to the Magistrate Judge's conclusion and seek the denial of FM & S's motion to dismiss.

## II.

■ This action involves some factual controversy, particularly with regard to the extent to which FM & S was involved in drafting the Offering Memorandum. Specifically, the third-party plaintiffs argue that FM & S contributed to all segments of the Offering Memorandum, while FM & S asserts that it assisted only in the preparation of the tax portion, which, they

argue, has not been alleged to have contained any misrepresentations or omissions. For the purposes of FM & S's motion to dismiss for lack of personal jurisdiction, all reasonable factual inferences must be drawn in favor of the third-party plaintiffs. *See Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993). While there exists some evidence to support FM & S's claim regarding its limited involvement in drafting the Offering Memorandum,[2] this court will assume, in addressing the motion to dismiss, that FM & S's involvement extended to those portions of the Offering Memorandum now in dispute. Nevertheless, the third-party plaintiffs maintain the burden of making a prima facie showing of jurisdiction. *See id.* at 60; *Design88 v. Power Uptik Productions,* 133 F.Supp.2d 873 (W.D.Va.2001).

### A.

Whether the court has jurisdiction over the third-party defendants is governed by the Virginia long-arm statute, Va.Code Ann. § 8.01–328.1 (Michie Supp. 2001). *See ESAB Group, Inc. v. Centricut,* 126 F.3d 617, 622 (4th Cir.1997). Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fifth Amendment. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 450 (4th Cir.2000). The Due Process Clause requires sufficient minimum contacts with a forum state such that "maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'" *International Shoe* Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

A dual analysis is generally utilized when jurisdiction is sought pursuant to a long-arm statute. *Peanut Corp. of Am. v. Hollywood Brands, Inc.,* 696 F.2d 311, 313 (4th Cir.1982). First, courts ascertain whether the assertion of jurisdiction comports with the relevant provisions of the state long-arm statute; and second, if the first part of the analysis is found in the affirmative, the court evaluates whether exercising jurisdiction conforms with the limitations of the Due Process Clause. *Id.* The third-party plaintiffs rely on section (A)(1) of the Virginia long-arm statute to establish a prima facie case of jurisdiction over FM & S. This section states that, "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's transacting business in this Commonwealth." Va.Code Ann. § 8.01–328.1(A)(1) (Michie Supp 2001). Courts have suggested that the real limitation on this provision is the Due Process Clause, and for that reason, it is not uncommon for the traditional two-part analysis to be merged into one when the "transacting business" section of the long-arm statute is implicated. *See Industrial Carbon Corp. v. Equity Auto & Equip. Leasing Corp.,* 737 F.Supp. 925 (W.D.Va.1990). *See also*

---

**2.** FM & S cites page 63 of the Offering Memorandum, which states, under the heading "Legal Matters," that, "[FMS] has acted as counsel for the General Partner and will opine upon certain tax matters relating to the Offering." While this statement establishes that FM & S contributed its opinion on "certain tax matters relating to the offering," it is does not establish that FM & S's involvement was exclusive to opining on tax matters. As written, the statement is conjunctive, suggesting that FM & S was involved in both generally acting as counsel for EHF XX in connection with the offering *and,* more specifically, contributing its opinion on certain tax matters. This statement does not exclude the possibility that FM & S was also involved in drafting the disputed portions of the Offering Memorandum.

4 Wright & Miller, Federal Practice & Procedure § 1069 at 193 (Supp.2001) (stating that, "because a majority of states...[have] enacted jurisdictional statutes that have been interpreted to extend to the limits of due process, this analysis frequently is collapsed into a one-step inquiry: does jurisdiction satisfy due process?"). This approach is especially pragmatic and less time-consuming when, as in this action, the movant has made its strongest arguments in favor of dismissal on Due Process grounds. However, despite the appeal of merging the statutory and constitutional inquiries, the doctrine of constitutional avoidance obligates this court to consider the two separately. *See* 4 Wright & Miller, Federal Practice & Procedure § 1069 at 193 (Supp.2001) If it is determined that exercising jurisdiction will not comport with the state long-arm statute, it is unnecessary to evaluate whether asserting jurisdiction conforms with the limitations of the Due Process Clause.

### B.

■ The third-party plaintiffs correctly assert that the "transacting business" provision of the Virginia long-arm statute is a "single act" prerequisite. Therefore, "jurisdiction will exist with respect to a cause of action arising from the business transaction if by that one act the nonresident can be said to have engaged in some purposeful activity in Virginia." *United States v. Pierre Point Shipping and Inv. Co., S.A. and M/V Konkar Thetis,* 655 F.Supp. 1379, 1380 (E.D.Va.1987) (citing *City of Virginia Beach v. Roanoke River Basin Ass'n,* 776 F.2d 484 (4th Cir. 1985); *Peanut Corp. of Am. v. Hollywood Brands, Inc.,* 696 F.2d 311 (4th Cir.1982)). However, this principle does not imply that any single act within the state of Virginia is sufficient to establish jurisdiction under the "transacting business" provision. *See Processing Research, Inc. v.*

*H. Larson,* 686 F.Supp. 119, 121 (E.D.Va. 1988). Rather, it is intended only to emphasize that it is the quality, and not the quantity of the acts that determines whether the transaction of business has occurred. *Id.* In this case, the quality of FM & S's contacts with Virginia is insufficient to support the third-party plaintiff's claim that FM & S was "transacting business" in Virginia.

FM & S argues that its only direct contact with Virginia consisted of a few phone calls and letters to counsel for the plaintiffs prior to the closing of the sale and purchase of the investment device. Furthermore, the phone calls at issue were not initiated by FM & S, but rather, by counsel for the plaintiffs. These sporadic, attenuated acts do not merit the imposition of jurisdiction. In fact, it has generally been held that, "mere phone calls and letters, and arguably fax communications, in furtherance of a transaction, are insufficient to form a basis for personal jurisdiction." *Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.,* 774 F.Supp. 393 (E.D.Va. 1991). *See also Processing Research,* 686 F.Supp. at 122. To hold otherwise in this case is to conclude that any non-resident law firm responding to a limited number of phone calls and inquiries on its client's behalf is "transacting business" in Virginia.

■ Furthermore, the long-arm statute's jurisdictional grant is limited to the extent that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Va.Code Ann. § 8.01–328.1(B) (Michie Supp 2001). Thus, not only must it be established that FM & S was transacting business in Virginia, but it must also be shown that the cause of action at issue arises from those transactions. FM & S claims that there have been no allegations

that the plaintiffs' cause of action arises out of its limited direct contacts with Virginia. That is, the plaintiffs have not claimed that, in its contacts via phone and letter, FM & S made any material misrepresentations or omissions regarding the investment. In response, the third-party plaintiffs assert that,

> [T]he documents drafted and contracts with Virginia relating to the purchase by plaintiffs are not merely incidental. *But for* FM & S' preparation of documents and communications with lawyers and others in Virginia, there would have been no sale of tenant-in-common interests by Equity Housing to plaintiffs and therefore no securities fraud claim. Thus, there is direct causation between the acts of FM & S and the claims of the plaintiffs. (emphasis added) (Third–Party Pl.'s Obj. to R & R at 3.)

However, it has been recognized that the "arising under" standard, "goes far beyond 'but for' causation, but instead approximates legal or proximate causation." *Chiaphua Components Limited v. West Bend Company*, 95 F.Supp.2d 505, 510. The plaintiffs' claims exist independently of FM & S's few letters to, and the phone calls it received from, Virginia, and thus, these actions can form no basis for this court to assert jurisdiction. *Id.*

While the causal relationship between the plaintiff's action and FM & S's phone and letter communications with Virginia is insufficient to support jurisdiction, the same cannot be said with regard to FM & S's participation in drafting the Offering Memorandum. The plaintiff's cause of action is based, in part, on alleged omissions and misstatements in the Offering Memorandum. Furthermore, for the purposes of the motion at issue, it is assumed that FM & S collaborated to some extent in drafting the portions of the Offering Memorandum now in dispute. However, while a causal relationship may exist between FM & S's contribution to the Offering Memorandum and the plaintiffs' suit, it is not clear that those contributions were of the quality and nature necessary to be considered the transaction of business in Virginia.

■ Pertinent factors for evaluating whether a defendant has transacted business in the forum include, "(i) where any contracting occurred, and where the negotiations took place, (ii) who initiated the contact, (iii) the extent of the communications, both telephonic and written, between the parties, and (iv) where the obligations of the parties the contract were to be performed." *Affinity Memory & Micro, Inc. v. K&O Enterprises, Inc.*, 20 F.Supp.2d 948, 952 (E.D.Va.1998). In this case, FM & S's presence in Virginia was negligible. FM & S has not represented any clients who reside or are headquarter in Virginia. FM & S has never had an office, post office box or telephone number in Virginia, and none of the firm's thirteen lawyers is admitted to practice law in Virginia. Furthermore, all of FM & S's contributions to the Offering Memorandum were made in California. Even when FM & S's subsequent contacts with Virginia via phone and letter are considered, the aggregation of the firm's contacts with Virginia are insignificant. Furthermore, it was plaintiffs' counsel, not FM & S, that initiated these contacts.

■ Nevertheless, the third-party plaintiffs claim that, under *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371 (4th Cir.1985), FM & S can be subjected to personal jurisdiction in Virginia through the actions of a third party, namely, its client, EHF XX. In *Blue Ridge*, Veribanc, Inc., a Massachusetts corporation that markets financial analyses to customers throughout the country, was sued when an analysis it produced was used by a customer to write an allegedly defamatory article regarding Blue Ridge Bank, a Virginia corporation.

Specifically, a Richmond, Virginia newspaper syndicate purchased Veribanc's analysis, which included a pessimistic projection regarding Blue Ridge's equity, and used it as the basis for an article questioning Blue Ridge's continued financial viability. The Fourth Circuit found that Veribanc had sufficient contact with Virginia to support the exercise of jurisdiction.

Despite the existence of some factual analogies to the current case, the third-party plaintiffs' reliance on *Blue Ridge* is misplaced. Primarily, *Blue Ridge* did not involve the imposition of jurisdiction under the "transacting business" provision of the long-arm statute, but rather, Va.Code § 8.01–328.1(A)(4), which allows for the exercise of personal jurisdiction in connection with actions causing tortuous injuries within the Commonwealth when an individual, "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or services rendered, in this Commonwealth." This standard deviates significantly from the "transacting business" criterion used in Va.Code § 8.01–328.1(A)(1).

■ Aside from the fact that a different section of the long-arm statute was at issue in *Blue Ridge*, Veribanc's contacts with Virginia far exceeded, both in terms of quantity and quality, those of FM & S. Veribanc had received fifty-seven orders for its analysis from customers in Virginia within seventeen months of incorporation. Upon the receipt of each order, Veribanc sent its analysis to the Virginia customer who then sent payment to Veribanc. Furthermore, Veribanc requested that the author of the allegedly defamatory article include its contact information, presumably with the expectation of attracting more Virginia customers. By affirmatively acting to promote the transaction of business in Virginia, Veribanc exemplified an entity "transacting business" and purposefully availing itself of the benefits of doing business in the Commonwealth. In contrast, FM & S's contribution to the Offering Memorandum was made in its role as counsel for EHF XX, not as an entrepreneur seeking to profit, either directly or indirectly, from the sale or use of its work-product in Virginia. That is, FM & S took actions to permit its client, not the firm itself, to sell interests in Virginia. While the legal services provided by a law firm may facilitate its client's business activities in another state, those activities should not be attributed to the law firm for the purposes of personal jurisdiction, particularly where the law firm's specific connections to a state are as attenuated as those of FM & S were to Virginia in this case. Furthermore, and contrary to the claims of the third-party plaintiffs, this conclusion does not conflict with the firmly established principle that the Virginia long-arm statute and Due Process Clause permit the exercise of jurisdiction over a person whether acting directly or by an agent. *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1046 (4th Cir.1988). EHF XX, in distributing the Offering Memorandum and contacting potential buyers in other states, was not acting under the direction of FM & S, nor was FM & S benefitting from this subsequent distribution, two elements that appear to underlie the willingness of courts to extend jurisdiction to principles based on the actions of their agents in another forum.

On the basis of these facts, the assertion of personal jurisdiction over FM & S in Virginia is inappropriate under Va.Code § 8.01–328.1(A)(1). Thus, it is unnecessary for this court to evaluate whether exercising jurisdiction comports with the limits of the Due Process Clause.

## III.

For the foregoing reasons, the court finds that it lacks jurisdiction over FM &

S, and thus dismisses the third-party action against the same. Therefore, it is unnecessary to address the third-party defendant's motion to dismiss for improper venue. An appropriate order this day shall enter.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

### ADJUDGED, ORDERED, AND DECREED

that third-party defendant Fainsbert, Mase & Snyder, LLP's March 12, 2001 Motion to Dismiss for Lack of Personal Jurisdiction shall be, and hereby is, GRANTED.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record.