# CIRCUIT COURT OF THE CITY OF RICHMOND

Virginia Electric
and Power Co.,
d/b/a Dominion Virginia Power

v.

Alliance Coal, L.L.C.

September 29, 2010

Case No. CL10-2852

By Judge Beverly W. Snukals

On September 20, 2010, the Court heard arguments on the defendant's Motion by Special Appearance to Quash Service of Process and to Dismiss Complaint for Want of Personal Jurisdiction. For the reasons set forth below, the Court denies the defendant's motion.

## I. *Facts*

Plaintiff, Virginia Electric and Power Co., d/b/a Dominion Virginia Power ("Dominion"), is a Virginia corporation with its headquarters in Richmond, Virginia, and an office in Glen Allen, Virginia. Defendant, Alliance Coal, L.L.C. ("Alliance"), is a Delaware limited liability company with its headquarters in Tulsa, Oklahoma, and an office in Lexington, Kentucky. Through its operating subsidiaries, Alliance produces coal in Kentucky, Indiana, Illinois, West Virginia, and Maryland, with coal reserves in Pennsylvania. Alliance sells coal for delivery to multiple states and overseas but has no offices or mining operations in Virginia.

Dominion and Alliance are parties to three agreements: (i) an Agreement for the Supply of Coal to Dominion's Mount Storm Power Station, effective June 22, 2005 ("CSA"); (ii) an amendment to the CSA, effective January 1, 2007 ("Amendment"); and (iii) a letter agreement, dated August 29, 2007 ("Settlement Agreement"). According to their terms, Virginia law governs all three agreements. The CSA, by its terms,

and the Amendment, by incorporation of the CSA, are deemed to have been executed in Virginia. The Settlement Agreement was executed in Virginia by Dominion's signed acceptance of such in Richmond, Virginia, which constituted the last act necessary to form the contract. See *Pro-Football, Inc. v. Paul*, 39 Va. App. 1, 9, 569 S.E.2d 66 (2002). Meetings took place both in Virginia and Oklahoma relating to these agreements. Under the CSA and the Amendment, among other terms, Alliance supplies coal to Dominion's power station in West Virginia. All coal sold by Alliance to Dominion is mined or purchased by Alliance outside of Virginia. Dominion also highlights Alliance's original solicitation of business with Dominion, as well as Alliance's numerous visits to Virginia for meetings with Dominion related to the contracts.

Dominion's Complaint alleges that Alliance breached its contractual obligations by failing to share with Dominion certain profits from sales of Alliance's coal to third parties. Alliance moves this Court to dismiss Dominion's cause of action for lack of personal jurisdiction under the Commonwealth's long arm statute, Code of Virginia §§ 8.01-328 et seq.

## II. *Legal Standard*

Under the Commonwealth's long-arm statute, Virginia courts "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code § 8.01- 328.1(A)(1). A "person" includes a corporation "whether or not a citizen or domiciliary of this State and whether or not organized under the laws of this State." *Id.* § 8.01-328. A single business transaction is enough to confer personal jurisdiction in Virginia. See, e.g., *Nan Ya Plastics Corp. U.S.A. v. DeSantis*, 237 Va. 255, 260, 377 S.E.2d 388 (1989) (citations omitted).

This statute confers specific personal jurisdiction "over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause of the Constitution of the United States." *Id.* at 259 (citing *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800 (1977)). The Due Process Clause restricts the Commonwealth's exercise of personal jurisdiction to defendants with "minimum contacts" within the forum state so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice. *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); see *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

### III. *Analysis*

#### A. *The Long-Arm Statute*

The key determination of this case is whether Alliance's alleged breach of contract arises out of Alliance's transaction of business, if any, within the Commonwealth. The Court answers this inquiry in the affirmative.

Alliance argues that the relevant business contacts for personal jurisdiction in a breach of contract claim include the activity encompassing the breach, specifically Alliance's sale of coal to third parties, which occurred outside of Virginia. Dominion argues that the relevant business contacts include the three contracts formed in Virginia, the meetings in Virginia, and Alliance's solicitation of Dominion's business. However, Alliance contends that, while the alleged breach "relates" to these contract-formation activities, it does not "arise from" these contacts as required by Virginia's long-arm statute.

Cases relied upon by both parties do not directly address the meaning of "arising from," and the Supreme Court of Virginia has not yet squarely defined this phrase. Alliance, therefore, urges the court to adopt the opinion of Judge Robert E. Payne of the Eastern District of Virginia in *Verosol, B.V. v. Hunter Douglas, Inc.*, stating, "In order for a cause of action to arise from business transacted in Virginia, the activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiffs substantive claim." 806 F. Supp. 582, 584 (E.D. Va. 1992) (quoting *City of Virginia Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 487 (4th Cir. 1985)). However, the persuasive authority of *Verosol* can be distinguished from the case at bar.

In *Verosol*, the plaintiff owned a patent for window blinds and entered into a license agreement with the defendant, granting defendant the right to manufacture, assemble, and sell window blinds according to the plaintiff's patent method. In return, the defendant would pay royalties and file quarterly sales reports to the plaintiff. In the event of a breach that was not cured, the parties had the right to terminate the license agreement. Both Verosol and the manufacturer were nonresidents who executed the license agreement in New Jersey and pursuant to New Jersey laws. The defendant subsequently sold its manufactured blinds to a Virginia retailer, who was named as a defendant to the cause of action, without reporting the sale or paying accrued royalties to the plaintiff under the license agreement. The retailer did not enter into the license agreement as a party, nor did it receive any rights under the license agreement. Verosol brought a declaratory judgment action to determine its rights to terminate the license agreement; it did not bring a patent infringement claim. Ultimately, the Verosol court declined to find contacts in Virginia sufficient to satisfy Virginia's long-arm statute because the defendant-manufacturer's "failure to perform

under the Agreement is not directly related to or caused by any Virginia activities." The Eastern District further clarified that "[t]he business [the defendant] allegedly transacted in Virginia is irrelevant to the issue whether the Agreement is terminated," because the "plaintiffs' cause of action does not 'arise from' [the defendant's] alleged jurisdiction-conferring acts." *Id.* at 583-90.

Essentially, Verosol asked the Eastern District to base its personal jurisdiction over the defendants on the sale of blinds to a third-party Virginia retailer, but the court declined to do so for lack of a sufficient connection between the underlying claim to declare the parties' contractual rights and the Virginia activities. In the case at bar, the converse situation exists. Dominion asks the Court to base personal jurisdiction for its breach of contract claim, for which the Court must determine the parties' rights, on the contract-formation activities in Virginia, rather than the activities involving third-party sales outside of Virginia. Under Alliance's interpretation of Verosol, twenty other forums could find personal jurisdiction over Alliance based on sales of coal to third parties in those twenty forums but still be governed by Virginia law. Yet this argument does not negate Dominion's assertion that contract-formation activities in Virginia give rise to Dominion's breach of contract claim. In fact, Verosol is favorable to Dominion's position because the Eastern District not only dismissed the claim with respect to the Virginia retailer but also transferred the matter to New Jersey, the state where Verosol formed its contracts with its defendant-manufacturer. *Id.* at 594. Therefore, Alliance's reliance on Verosol is misplaced.

Alliance insists that a breach of contract claim resulting from sales to third parties cannot arise from the contract-formation activities that occurred in Virginia. However, Alliance concedes that a claim based on delivery of defective goods could arise from such activities. The Court fails to see a distinction, and none of the cases cited by either party suggests the need for such a distinction. Whether Alliance refuses to share certain profits according to a contract term or misdelivers goods according to a contract term, both situations constitute breaches of contract, which arise from the formation of the contracts under which the parties voluntarily assumed certain obligations. In fact, the holdings of the Supreme Court of Virginia support this interpretation. *Nan Ya*, 237 Va. at 260-61 (finding personal jurisdiction where defendant reached into Virginia and the contract was formed in Virginia); *I.T. Sales, Inc. v. Dry*, 222 Va. 6, 8, 278 S.E.2d 789 (1981) (finding personal jurisdiction where the employment contract was formed in Virginia despite substantially all of the required performance occurring outside of Virginia); *Kolbe, Inc. v. Chromodem Chair Co.*, 211 Va. 736, 180 S.E.2d 664, 667-68 (1971) (finding personal jurisdiction where the defendant reached into Virginia, the purchase order was secured in Virginia, even though a single order of chairs was shipped from the California defendant to North Carolina). All of the above Supreme Court

cases affirmed personal jurisdiction over nonresident defendants where breaches of contracts, formed in Virginia, stemmed from conduct that took place outside of Virginia.

The Court finds, therefore, that Virginia's long-arm statute has been satisfied to confer personal jurisdiction over the defendant based on its transactions of business in Virginia consisting of the execution of the CSA, Amendment, and Settlement Agreement, all of which are governed by Virginia law; Alliance's solicitation of business with Dominion; and Alliance's meetings in Virginia related to these contracts. The Court determines that Dominion's alleged breach of contract properly arises from these contacts.

## B. *Due Process*

The Court's holding does not violate Alliance's rights under the Due Process Clause. Through Alliance's business contacts in the Commonwealth, Alliance purposefully availed itself of "the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Furthermore, the parties' mutual decision for Virginia law to govern these contracts is an important factor in the Court's determination that Alliance's constitutional rights remain unharmed. See *Burger King*, 471 U.S. at 482. Therefore, it was foreseeable that Alliance's activities make it amenable to suit in this forum without offending traditional notions of fair play and substantial justice.

## IV. *Conclusion*

For the reasons stated above, the Court denies the defendant's motion to dismiss the Complaint.